IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

APR 2 3 2010

David J. Bradley, Clerk of Court

ANTONIO JUAREZ,                          §
    Plaintiff,                           §
                                         §
v.                                        §            CIVIL NO. B-09-14
                                         §
BROWNSVILLE INDEPENDENT                    §
SCHOOL DISTRICT; TRUSTEES                  §
ROLANDO AGUILAR, JOE COLUNGA,              §
RUBEN CORTEZ, AND RICK ZAYAS;              §
MIGUEL SALDAÑA; AND                        §
SUPERINTENDENT HECTOR                      §
GONZALES AND HIS SUCCESSORS,               §
    Defendants.                          §

## MEMORANDUM OPINION AND ORDER

The United States Magistrate Judge ("Magistrate Judge") has filed a Report and Recommendation (Doc. No. 52) recommending that this Court grant in part and deny in part the Defendants' Motions to Dismiss (Doc. Nos. 29, 30, 31). The only claim that the Magistrate Judge recommended survive summary judgment was Antonio Juarez's ("Plaintiff" or "Juarez") § 1983 First Amendment retaliation claim against the individual defendants in their personal capacities. (Doc. No. 52 at 2). The Trustee Defendants Aguilar, Cortez, Colunga, and Zayas, as well as Defendant Brownsville Independent School District ("BISD") have filed objections to the Report and Recommendation. (Doc. No. 53.) The Plaintiff has also filed objections to the Report and Recommendation (Doc. No. 55), as has Superintendent Gonzales (Doc. No. 54). BISD and the Trustee Defendants filed a response to the Plaintiff's Objections. (Doc. No. 56.) The Motions to Dismiss and Objections to the Report and Recommendation are all pending before the Court. (Doc. Nos. 29, 30, 31, 53, 54, 55.)

1

Having considered *de novo* the Report and Recommendation, the parties' objections and responses, and the record, the Court hereby adopts in part and rejects in part the Report and Recommendation. In so doing, it also GRANTS in full Defendant Miguel Saldana's Motion to Dismiss. (Doc. No. 30.) It GRANTS in part and DEFERS in part the Trustee Defendants, BISD, and Superintendent Gonzales's Motions to Dismiss (converted to Motions for Summary Judgment). (Doc. Nos. 29, 31.) It OVERRULES in part and DEFERS in part the Trustee Defendants, BISD, and Superintendent Gonzales's Objections. (Doc. Nos. 53, 54.) It SUSTAINS in part Plaintiff's Objections (at least at this stage) with respect to the possibility of admissibility of certain evidence, but only to the extent that the portions of the proffered evidence in question are relevant and not barred by the hearsay rule. (Doc. No. 55.) With respect to the request to depose Hector Gonzales, the Court GRANTS same. (Doc. No. 55.) The Court OVERRULES Plaintiff's objection with respect to exhaustion of claims against Defendants. (Doc. No. 55.) The Court by separate order also amends the Scheduling Order of May 12, 2009. (Doc. No. 24.) Finally, this Court hereby admonishes Plaintiff to comply with future orders of the Court or face dismissal of his entire case.

## I.  Summary of Alleged Facts Underlying the Complaint[1]

On August 12, 2008, Plaintiff was hired by Defendant BISD as its Chief Financial Officer under a non-Chapter 21 contract.[2] As part of his duties, he was involved in the bidding process for

---

[1] This factual summary is culled from the Plaintiff's Complaint (Doc. No. 25) and must be taken as factually true when considering Motions to Dismiss. This rule is not the same when said motion has been converted to a motion for summary judgment. Therefore, this factual recitation should not be construed as findings of fact by this Court.

[2] Chapter 21 of the Texas Education Code regulates certification and employment of teachers. *See* TEX. EDUC. CODE § 21. It contains certain statutory protections that apply to Chapter 21 contracts, but that do not necessarily apply to non-teacher contracts. For example, *compare* TEX. EDUC. CODE § 21.206 (a) (requiring school boards to provide teachers with notice

the District's Stop Loss Insurance Coverage, and submitted a recommendation in favor of "AAG" to the BISD Board at the September 16, 2008 Board Meeting because he felt it offered the best value. According to Plaintiff, this recommendation formed the basis for the Board's allegations that he had "misinformed" them, and their subsequent "illegal inquiry" and investigation of him, in which Defendant Saldana was also allegedly involved. Plaintiff also suggests that the Board wanted to award the contract to a different bidder, and therefore became incensed at the Plaintiff's recommendation.

This alleged "misinformation" apparently also was the basis of a grievance filed against Plaintiff by Kent Whittemore, a complaint allegedly filed at the behest of the Trustee Defendants according to a tactic of "setting one employee to grieve against another" so as to give the Board an excuse to remove employees. Following the investigation, but before the Level III grievance hearing (at which Plaintiff was for the first time allowed to participate), Plaintiff was asked to resign as Chief Financial Officer (after only three months on the job), and to either take a re-assignment as Grants Administrator or face termination. Plaintiff agreed "out of desperation" to be reassigned and submitted a letter of resignation, but then allegedly rescinded that resignation and filed his own grievance with the District. At that point, Defendant Gonzales allegedly told the Plaintiff that he had been forced by the Trustee Defendants to seek Plaintiff's resignation or be terminated himself.

Plaintiff also alleges that the Trustee Defendants sought his aid in ousting Defendant Gonzales, and that they believed the Superintendent was really behind his Stop Loss

---

of whether the board proposes to renew or not renew a teacher's contract prior to contract expiration) *with* Plaintiff's Contract § 8.2 (Doc. No. 25, Ex. 1c) ("This Contract is not governed by the renewal and nonrenewal provisions of Texas Education Code Chapter 21. This Contract does not give the Employee any rights to the procedures required by Education Code Chapter 21 or to any property rights in employment beyond the contract term.").

recommendation.  Trustee Defendant Zayas allegedly had enlisted Elizabeth Brito-Hatcher to file

a grievance against Defendant Gonzalez.  Then, former Trustee Otis Powers and Defendant Trustee

Colunga allegedly sought Plaintiff's support in ousting Defendant Gonzales.  Instead of cooperating,

Plaintiff states that he met with FBI Agents on January 15, 2009 to report what had been going on

at BISD.  After contacting the FBI, Plaintiff informed the Defendants of his report, and ultimately

on June 30, 2009, his contract with BISD was not renewed.[3]

Based on the above facts, Plaintiff asserts claims under the Texas Open Meetings Act; state

contract law; and 28 U.S.C. § 1983 against BISD, the Trustee Defendants, and Defendant Gonzales.

Specifically under Section 1983, Plaintiff alleged retaliation in violation of his First Amendment

rights because of his contract nonrenewal following the FBI report and denial of due process in

violation of the Fourteenth Amendment because of BISD's policy and the Trustees' conspiracy to

force employee resignations by soliciting the filings of grievances against employees they want

"ousted."  Against Defendant Saldana, Plaintiff filed a tortious interference with contract claim.

## II.  Magistrate Judge's Report and Recommendations and Party Objections

The Magistrate Judge recommended dismissal of the following claims:

1. Juarez's § 1983 Fourteenth Amendment Due Process and First Amendment retaliation claims against Defendant Trustees and Gonzales in their official capacities;

---

[3] Plaintiff's summary judgment evidence to support this claim is virtually non-existent. Plaintiff has not even proffered an affidavit of his own swearing to the facts supporting these claims.  The Court is granting Plaintiff a short reprieve to do the discovery it needs and to prepare the necessary response; however Plaintiff would be wise to act quickly and thoroughly. Counsel for Plaintiff would also find it prudent to review the appropriate way to respond to a motion for summary judgment.  In that regard, this Court suggests *Summary Judgments in Texas: State and Federal Practice*, authored by Judge David Hittner and Lynne Liberato, found at 46 HOUSTON L. REV. 1379 (2010).

2. Juarez's § 1983 Fourteenth Amendment Due Process and First Amendment retaliation claims against BISD;

3. Juarez's § 1983 Fourteenth Amendment Due Process claims against individual defendants in their personal capacities;

4. Juarez's § 1983 First Amendment retaliation claim against individual defendants in their personal capacities, relating to Juarez's reassignment;

5. Juarez's contract claim, as well as claims based upon the Texas Open Meetings Act (TOMA) and Texas Whistleblowers Act (TWA) against BISD, its Trustees, and Gonzales; and

6. Juarez's tortious interference with contract claim against Defendant Saldana. (Doc. No. 52 at 27.)

As noted above, the only issues that the Magistrate Judge did not recommend summary disposition of were:

7. Juarez's § 1983 First Amendment retaliation claim against the individual Defendants in their personal capacities, relating to the nonrenewal of Juarez's employment contract (*Id.*); and

8. Defendants' motion for summary judgment based upon a qualified immunity defense to Juarez's claims (*Id.* at 22–23.).

The Trustee Defendants, BISD, and Defendant Gonzales object only to the Magistrate Judge's recommendation not to dismiss the remaining First Amendment retaliation claim against the Trustee Defendants and Defendant Gonzales in their individual capacities for Juarez's alleged report to the FBI. (Doc. No. 53 at 1; Doc. No. 54.)

The Plaintiff objects that he had not failed to exhaust his contract, TOMA, and TWA claims because there was no Notice of Termination in his case, and therefore the exhaustion period allegedly never began or ran. (Doc. No. 55 at 1–2.) He continues to make due process objections as well, stating that "Notice of 'Good Cause,' would be required, at a minimum, with a 'meaningful'

5

due process hearing on what the 'Good Cause' was to terminate," and that he received neither notice nor a hearing before he was pressured to resign. (*Id.* at 2.) He also objects to the finding that his evidentiary submissions, upon which he relies to show a policy of a corrupt conspiracy to coerce employees to file grievances against each other, were inadmissible hearsay. (*Id.*) Based on this evidence, he objects that it was plausible that BISD had the requisite intent for a jury to find it liable for the First Amendment retaliation claim. (*Id.* at 3.) The Plaintiff also requests additional time to depose Defendant Gonzales. (*Id.* at 3–4.)

In response to Plaintiff's objections, the Trustee Defendants and BISD refute his exhaustion argument and argue that in the alternative, they are entitled to governmental immunity on the contract claims. (Doc. No. 56 at 1–4.) They also continue to object to the Plaintiff's evidentiary submissions as hearsay and improper summary judgment evidence. (*Id.* at 4–6.) They urge that the Court deny the Plaintiff's request to depose Defendant Gonzales as untimely and barred by the Magistrate Judge's September 25, 2009 order. (*Id.* at 6–7.)

### III. Legal Standards

#### A. Standard of Review on Magistrate Findings and Recommendations

A district court reviews *de novo* "any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b) (2006). In addition, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b). "It is reasonable to place upon the parties the duty to pinpoint those portions of the magistrate's report that the district court must specifically consider." *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir.1982), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79

6

F.3d 1415 (5th Cir.1996). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Id.* at 410 n. 8; *accord United States v. Carrillo-Morales*, 27 F.3d 1054, 1061 (5th Cir.1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L.Ed.2d 1119 (1995).

### B. Dismissal and Summary Judgment

Defendants filed motions for dismissal of Plaintiff's claims under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Doc. Nos. 29, 30, 31). The Magistrate Judge converted the motions into a Rule 56 summary judgment motion because matters outside of the pleadings were submitted and not excluded by the Magistrate Court. (Doc. No. 52 at 7); FED. R. CIV. P. 12(d). The Court in doing so gave all parties additional time to revise pleadings and to submit summary judgment proof.

Under Rule 12(b)(1), a court may dismiss a claim for lack of subject matter jurisdiction "only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009) (citation omitted); FED. R. CIV. P. 12(b)(1). Under Rule 12(b)(6), dismissal of a complaint "is appropriate when the plaintiff has failed to allege 'enough facts to state a claim to relief that is plausible on its face' and fails to 'raise a right to relief above the speculative level.'" *National Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 547 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials

on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The nonmoving party must go beyond the pleadings and provide specific facts showing that there is a genuine issue for trial. *Id.* at 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322–23.

The court should not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The nonmoving party's burden "is not satisfied simply by creating some metaphysical doubt as to the material facts or by providing only conclusory allegations, unsubstantiated assertions or merely a scintilla of evidence." *Id.* (citations omitted). A court will resolve factual controversies in favor of the nonmoving party "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

## IV.  Discussion

### A.  Uncontested Conclusions

Although the Plaintiff makes a "general objection" asserting that "the evidence . . . raise[s] a fact issue as to BISD's intent and motive by raising the inference of improper action by BISD and the [B]oard members," he does not specifically object to the following findings and conclusions by

8

the Magistrate Judge:

- That his § 1983 Fourteenth Amendment Due Process and First Amendment retaliation claims against Defendant Trustees and Gonzales in their official capacities should be dismissed because only BISD can be sued in its official capacity in a § 1983 suit;

- That his § 1983 First Amendment retaliation claim against individual defendants in their personal capacities, relating to his reassignment should be dismissed because no protected speech occurred before Juarez's reassignment; and

- That his tortious interference with contract claim against Defendant Saldana should be dismissed because there was no breach of his contract.

Nor does he point this Court to any summary judgment evidence that creates an issue of material fact. The Court therefore adopts these findings and conclusions because they were supported by the record and because they were not specifically objected to by the Plaintiff. *See Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir.1982) (en banc), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Further, these rulings are legally correct.

*B. Evidentiary Submissions*

In response to the Magistrate Judge's August 18, 2009 Order notifying the parties that the motions to dismiss would be considered as Rule 56 motions (Doc. No. 49), Juarez submitted a CD containing two taped conversations as well as affidavits authenticating the conversations on the CD (Doc. No. 51.). The first conversation took place between the Plaintiff and Elizabeth Brito-Hatcher, a BISD employee, and the second conversation took place between the Plaintiff and Otis Powers, a former BISD Trustee. (*Id.*) Also included in the Plaintiff's summary judgment materials was an affidavit by former Trustee Patrick Lehman. (Doc. No. 51.)

These conversations and their corresponding transcripts were ruled in the Magistrate Judge's Report and Recommendation to be hearsay and improper summary judgment materials. (Doc. No.

9

52 at 21.)  Plaintiff submits that these summary judgment materials are relevant to establish a

"corrupt conspiracy by the Defendants to coerce employees to file grievances against each other."

(Doc. No. 55 at 2 (quoting Magistrate Judge's Report and Recommendation).)  He claims that the

conversation between him and Brito-Hatcher is "an admission by BISD itself," that the Lehman

affidavit is also "such an admission because it addresses actions by BISD during his term as a

Trustee," and that the conversation between him and Otis Powers is a co-conspirator admission.  (*Id.*

at 3.)

The Court has reviewed the materials and finds that, to the extent the tape recordings contain

relevant statements and that the recordings have been authenticated, they are admissible summary

judgment materials.  As pointed out by Plaintiff, some of the materials are relevant to the matter of

whether a genuine issue of material fact exists concerning the alleged corrupt conspiracy, which

bears on the Plaintiff's § 1983 Fourteenth Amendment claim.  Plaintiff also alleges that the

evidentiary submissions are not hearsay, citing Federal Rules of Evidence 801(d)(2)(D) and (E), and

901.  (Doc. No. 55 at 2.)

During her conversation with Plaintiff, Brito-Hatcher makes statements regarding what

Defendants Zayas and Saldana "wanna hear from [him]" in a grievance that they want him to file

against Defendant Gonzales.  She makes statements describing various relationships —e.g., "Rick

and Saldana were partners . . . they were buds"—that are relevant to the issue of whether or not a

conspiracy existed.  Plaintiff's unproven exhibits to his Complaint[4] support his allegation that Brito-

_____

[4] Since the exhibits to the Complaint—an email from Brito-Hatcher and handwritten notes by Brito-Hatcher—are hearsay, the Court considers them at best to be only corroborating evidence for the purpose of determining that the Plaintiff has demonstrated the existence of a conspiracy, of which Brito-Hatcher is a co-conspirator.  This conclusion may be somewhat questionable given that Plaintiff in oral argument stated that Brito-Hatcher worked for him.

Hatcher was involved in the conspiracy with the Defendants, and her statements from the recording would therefore be admissions by a co-conspirator, not hearsay. *See* Doc. No. 25, Exs 3, 4, 5a; FED. R. EVID. 801(d)(2)(E).

Similarly, Otis Powers has been linked to the conspiracy by Plaintiff's conversation with Brito-Hatcher, and the statements in Powers's conversation with Plaintiff are also suggestive of a conspiracy to have Juarez file a grievance against another employee, Superintendent Gonzales.  For example, he states "Your grievance is against Hector Gonzalez and the [B]oard is gonna love you for that.  My sister-in-law filed a grievance. . . . Elizabeth Hatcher filed a grievance." (Doc. No. 51-5 at 16.)  Then, he tells Plaintiff "you need to do it to protect your job, bottom line. . . . They [the Board] might say, you know what, yeah we'll do it because you burned Hector. . . . Dude, I give you some good advice.  Here you have it.  Can you hurt Hector to protect you." (*Id.* at 17.)

Both of these conversations were provided in audio files accompanied by affidavits attesting to the authenticity of the recordings and identifying the voices on the recordings.  (Doc. Nos. 51-2, 51-3.)  The contents of the files contain relevant statements, including statements of the Defendants recounted by co-conspirators regarding the conspiracy.  The Court therefore finds that, to the extent the statements are relevant to the issues being considered in the summary judgment motions and are admissible under exceptions to the hearsay rule, the recordings and statements therein may be considered.  The Court notes that Powers is not a current BISD Trustee, and that statements by him would only be admissible as admissions against interest against the actual defendants if they were co-conspirators.

As for the affidavit of Patrick Lehman, the Court finds that certain portions are admissible and others inadmissible.  To the extent that statements within the affidavit contain relevant factual

information of which Mr. Lehman has personal knowledge, they are admissible.  Statements that are double hearsay, however—for example, Lehman's statement that he was told by Superintendent Gonzalez: "Rick Zayas threatens and orders Superintendent Gonzalez to 'remove Juarez' or 'be removed,'"—are not admissible.  FED. R. EVID. 801, 802.

The Court therefore rules that the relevant statements within the summary judgment materials are admissible for the purposes of deciding the pending motions, but not the double hearsay contained in Lehman's affidavit.  For the purpose of clarity, the Court finds that the statements are relevant so long as they make it more or less likely that the Defendants were involved in a conspiracy to coerce employees into filing grievances against each other, or they make any other fact essential to the Plaintiff's claims more or less likely to be true.

### C. Juarez's § 1983 First Amendment retaliation claim against individual defendants in their personal capacities, relating to nonrenewal of Juarez's employment contract

In their objection to the Magistrate Judge's Report and Recommendation, the Trustee Defendants, and by extension, Defendant Gonzales, argue that (i) the Plaintiff did not plead any facts indicating that the individual Trustees took action to nonrenew his contract (Doc. No. 53 at 12–14); and (ii) the Plaintiff failed to plead facts showing that the Trustees were aware of the specifics of what he told the agents, including its context, audience, and content.  (*Id.* at 16–18.)  This objection attacks the pleadings, and the Court therefore turns to the pleadings to determine whether or not they are sufficient in light of the Defendants' arguments.

### 1. Individual Trustees' Responsibility for Nonrenewal

According to the law to which the Trustee Defendants allude, the decision whether or not to rehire the Plaintiff hinged on both the Superintendent (Defendant Gonzales) and the Board of

Trustees. TEX. EDUC. CODE § 11.1513. Texas law requires that the Superintendent make recommendations, but the Board either accepts or rejects these recommendations. *Id.* Based on this requirement, the Trustee Defendants aver that the Plaintiff's nonrenewal argument should be dismissed, because officially, the Trustee Defendants could not have legally voted not to renew Plaintiff's contract unless the Superintendent first recommended that Plaintiff be hired. (Doc. No. 53 at 17–18.)

According to the allegations and evidentiary submissions of the Plaintiff, however, the Trustee Defendants and the Superintendent routinely committed acts contrary to the way a school system is supposed to act. This includes threatening Plaintiff with nonrenewal of his contract if he did not falsify a grievance against Defendant Gonzales (Doc. No. 25 at 15) and Defendant Gonzales's seeking the Plaintiff's resignation or else be fired himself (*id.* at 7). The taped conversations and Lehman affidavit, submitted by Plaintiff, also support the notion that the Trustee Defendants and the Superintendent were not strictly following official procedures.[5] Simply because the Trustee Defendants did not formally take action to nonrenew Plaintiff's contract does not mean that they took no action.

In addition, the Plaintiff has offered some evidence that he sought continued employment

---

[5] *See, e.g.*, Lehman Aff. (Doc. No. 51-6 at 2–4) ("During the last few months of my term [as Trustee of BISD], certain irregularities were occurring during the meetings of the Board of the BISD. . . . I felt . . . that attorney Saldana was somewhat evasive with his answers. . . I was not aware of any investigation that [Defendant] Mr. Cortez alluded to."); Conversation with Otis Powers (Doc. No. 51, Att. A) (Otis Power to Juarez: "There was no contract [with Juanita Rodriguez]...I know everything, I was on the [B]oard at that time. So they tried to develop a contract that dates [back] to July 1 of '08 to June 30 of '09 because they were already paying Juanita prior to that. . . ."). *See also infra*, § IV.E (this Court's finding that Plaintiff has provided sufficient facts to raise a factual dispute as to whether the Defendants were engaged in a corrupt policy to coerce employees into filing grievances against each other).

13

with BISD.  In his January 16, 2009 grievance filed with BISD, Juarez seeks to revoke his resignation, and his November 24, 2008 letter of resignation also expresses his continued desire to work with the district following his resignation as CFO.  (Doc. Nos. 25-2 at 5; 42 at 28.)  This is contrary to Defendants' contention that Plaintiff "does not even allege he asked to be rehired before or after June 2009."  (Doc. No. 53 at 12.)  Moreover, Plaintiff's complaint specifically pleads that he "was retaliated against by the Trustee Defendants after they learned . . . that Complainant had reported their conspiratorial acts to Law Enforcement Agents," and that this report contributed to the ultimate result of nonrenewal.  (Doc. No. 25 at 15.)  Although Defendants dispute causation, claiming that they are not responsible for his contract nonrenewal the Court finds that since Plaintiff sought continued employment and did not receive a contract renewal, there is a fact issue as to causation such that Defendants are not entitled to summary judgment.  The nonrenewal of Plaintiff's contract is alleged to be and plausibly is the result of action by the Defendant Gonzales and the Trustee Defendants, and the Court therefore finds that such nonrenewal is a viable adverse employment action on which Plaintiff's First Amendment retaliation claim may rest.  *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000); *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 283–84 (1977).

### 2.  *Report to the FBI and Subsequent Retaliation*

In their objections to the Report and Recommendation, the Defendants have asserted that none of the summary judgment evidence in the record supports the Plaintiff's claim that he made a report to the FBI or that the Defendants had knowledge about the report.  (Doc. No. 53 at 16–17.)  This Court agrees that there is no such evidence on file.  However, the Court is granting Plaintiff a short time period to fix the flaw.  Therefore, while the Court agrees that the record before it has no

evidence that the Plaintiff made a report to the FBI or informed the Board about it, the Court solely for purposes of this order will assume such evidence exists.

The Court finds, contrary to the Defendants' objection to the pleadings, that the Plaintiff has sufficiently asserted facts regarding his report to the FBI and his later disclosure of this report to the Defendants.  In his Complaint, after listing the myriad alleged criminal violations and TOMA violations, Plaintiff states that he "disclosed to the Trustee Defendants, and a member of Saldana's firm . . . that a report had been made to an appropriate law enforcement agency concerning their above-described activities." (Doc. No. 25 at 15–17.)  Plaintiff also described his report as one that "concerned matters of 'public concern,' not of personal interest.  There was great public concern regarding the treatment of the Superintendent and the expenditure of hundreds of thousands of dollars in taxpayer money toward the District's Stop Loss Insurance Coverage."  (*Id.* at 15.) Additionally, the summary of events filed with the Court in the Plaintiff's Response to Defendants' Motions to Dismiss includes the allegation that on January 20:

> Juarez reports that he has informed FBI of the Board's wrongdoings, including:
>
> (i) coercion regarding grievance against superintendent
> (ii) bidding practices regarding Stop Loss bids. (Doc. No. 42 at 44.)

These facts, while perhaps not as vividly described as the Defendants would like, are sufficient to meet the law's demand of identifying the precise speech that the Plaintiff claims addressed a matter of public concern and triggered retaliation.  *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 342 (5th Cir. 2003).

The Magistrate Judge determined that the Plaintiff's claim against the Defendant Trustees and Defendant Gonzales in their individual capacities could not be disposed of summarily because

a genuine issue of material fact exists as to whether the cause of Plaintiff's contract nonrenewal was his protected speech in the form of his report to the FBI. (Doc. No. 52 at 22–23 (citing *Lytle v. Bexar County*, 560 F.3d 404, 418 (5th Cir. 2009)).) This Court, having reviewed the pleadings and evidentiary submissions *de novo*, concludes, with the previously noted exception, that such a genuine issue of material fact still exists. Plaintiff has alleged and in those allegations described in detail that he made a report to the FBI about matters of public concern—specifically, wrongdoing and corruption of public officials; that he told the Defendants Trustees and Gonzales of such report at a Board meeting in January 2009; and that after he informed them of his report of their allegedly criminal and otherwise unlawful acts, his contract was non-renewed. The Court therefore concludes that the Defendants are not entitled to summary judgment on the Plaintiff's § 1983 First Amendment retaliation claim against them in their personal capacities for his nonrenewal.

D. *Qualified Immunity*

The Magistrate Judge also found that the Defendants were not entitled to summary judgment for their Qualified Immunity defense because a genuine fact issue exists as to the cause of Juarez's nonrenewal. (Doc. No. 52 at 22–23.) He found that since Juarez engaged in protected speech by reporting the Defendants' conduct to the FBI, then informed the Defendants that he had made the report, and subsequently had his contract non-renewed, he had satisfied his summary judgment burden. (*Id.* at 20.) Moreover, because qualified immunity turns on whether or not Plaintiff's protected conduct was the cause of his contract nonrenewal, it was not appropriate to decide the qualified immunity question at the summary judgment stage. (*Id.* at 22–23.) Defendants have objected to this finding, resting their objection on the argument that such finding defeats the purpose of qualified immunity in that it would force Trustees to provide employees with hearings every time

16

they learn that an employee has engaged in protected speech, and reprising the argument that the Plaintiff failed to plead sufficient facts "specifying the statement's context, its audience, and its exact content." (Doc. No. 53 at 15–17.)

With respect to the first argument, the Court disagrees—merely because a fact issue exists does not mean that the Defendants will incur liability. The Magistrate Judge's Report and Recommendation does not decide the issue of whether the Defendants violated Plaintiff's clearly established constitutional right, but merely finds that the issue cannot be decided in favor of the Defendants based on the summary judgment evidence. The "series of untenable situations" that the Defendants suggest, therefore, do not logically follow or legally compel this Court to find in favor of the Defendants.

With respect to the second issue, the Court has already determined that Plaintiff's pleadings sufficiently explained the alleged protected speech. The Court therefore defers any final ruling to see if evidence actually backs up these allegations. Therefore, the Court finds that the Defendants are not entitled to qualified immunity as a matter of law at this point in time.

### E. Juarez's § 1983 Fourteenth Amendment Due Process and First Amendment retaliation claims against BISD

In order to establish a § 1983 claim against BISD, Juarez must show that BISD had an "official policy" or "governmental 'custom'" that was "responsible for a deprivation of rights protected by the Constitution." *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 690–91 (1978). Such custom need not have "received formal approval through the body's official decisionmaking channels." *Id.* at 691.

In the Fifth Circuit, the formulation of municipal liability is as follows:

A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.

Official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam).

*1. First Amendment Retaliation*

A § 1983 First Amendment Retaliation claim requires the Plaintiff to show that: (1) he suffered an adverse employment decision; (2) he was engaged in a protected activity; (3) a causal relationship exists between the two; and (4) "the execution of a policy, custom, or practice of the board caused the adverse action." *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 579–80 (2003).

Two potential adverse employment decisions were considered in the Report and Recommendation: the Plaintiff's reassignment and the nonrenewal of his contract. The Magistrate Judge determined that Plaintiff's transfer from the position of Grants Administrator to CFO could not be considered an adverse employment action because Plaintiff did not "identify the respective salaries, benefits, [or] responsibilities of each position." (Doc. No. 52 at 17.) Even if it were, however, the Magistrate Judge found that the Plaintiff had not engaged in protected activity

18

preceding his reassignment.  The Plaintiff's insurance recommendation was not protected activity because it was within the scope of his employment as CFO, and the only protected activity—the communication to the FBI—took place after the Plaintiff had been reassigned.  Therefore, the Plaintiff could not have been reassigned based on protected activity, whether or not any official policy was involved, and Defendant BISD is entitled to summary judgment on the claim that Plaintiff was reassigned in retaliation for exercising his First Amendment rights.

With respect to nonrenewal of his contract, Plaintiff would have to demonstrate that the Board itself had an official policy or custom that caused the violation of his First Amendment rights. In his objections, he claims that a corrupt conspiracy did exist "to coerce employees to file grievances against each other."  (Doc. No. 55 at 2.)  He has also supported this allegation with sufficient evidence to raise a genuine fact issue that the coercive policy exists: the conversations with Brito-Hatcher and Powers both contain statements suggestive of such a policy.  (*See* Doc. No. 51 at Attachment A.)

To state a claim for municipal liability, Plaintiff must do more than state that a policy exists. He must also show that it is the cause of the adverse action that he suffered—in this case, the violation of his First Amendment rights.  *See Brady v. Fort Bend County*, 145 F.3d 691, 698 (5th Cir. 1998) (citing *Monell*).  Plaintiff's allegation that he reported the policy of corruption to the FBI and then was retaliated against raises the inference that the official policy (and Plaintiff's opposition to it) was the moving force behind his contract nonrenewal.  (Doc. No. 25 at 15.)  *Cf. Sharp v. City of Houston*, 164 F.3d 923, 935 (5th Cir. 1999) (denying defendant's motion for j.m.l. where evidence demonstrated a policy of retaliation for a "code of silence" as the cause for plaintiff's adverse employment action).  Therefore, the Court finds that BISD is not entitled to summary judgment on

Plaintiff's § 1983 First Amendment retaliation claim for his contract nonrenewal.

### 2. Fourteenth Amendment Due Process

To establish a § 1983 Fourteenth Amendment Due Process claim concerning a property interest against BISD, Plaintiff would first need to show "a 'legitimate claim of entitlement'" to a property interest. *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003) (quoting *Board of Regents v. Roth*, 408 U.S. 564 (1972)).  Second, the Plaintiff must demonstrate that he was deprived of such property interest without "notice of a proposed action and an opportunity to present his side of the story."  *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 151 (5th Cir. 1991).  Third, he must also show that an official policy or custom that caused the deprivation of his property interest without the requisite procedural protections.  *Cf. Monell*, 436 U.S. at 690.

Juarez claims that he was constructively terminated because the Defendants coerced him into resigning and accepting reassignment, and then did not renew his contract. (Doc. No. 25 at 14.)  He asserts that he was coerced into such resignation based upon the Defendants' tactics and policy of having other employees file grievances against each other.  (*Id.* at 6–7.)  In his case, Keith Whittemore filed a grievance against the Plaintiff, and the Defendants instituted an investigation against the Plaintiff in conjunction with the grievance.  (*Id.* at 4–7; *see also* Doc. No. 51-6 at 2–4 (Affidavit of Patrick Lehman).)  Then, before the Plaintiff was able to appear at a hearing regarding the Whittemore-filed grievance, the Defendants asked him to resign as CFO, then to either be "take a re-assignment as Grants Administrator or face termination."  (Doc. No. 25 at 7.)  Plaintiff alleges that "[b]y forcing a resignation" instead of showing "good cause" as required by his contract, "the Trustee Defendants and Gonzalez deprived Complainant of the basic due process required by the Fourteenth Amendment, . . . resulting in a Constructive Termination."  (*Id.* at 8.)

The Magistrate Judge determined that Juarez had "failed to identify a cognizable property interest, for purposes of due process, in his assignment as BISD's CFO," and therefore recommended granting summary judgment to all Defendants on the § 1983 Fourteenth Amendment Due Process claim regarding Juarez's reassignment. (Doc. No. 52 at 11–13.) This conclusion at least partly flowed from the Magistrate Judge's determination that no "decrease in salary or benefits" accompanied the reassignment. (*Id.* at 13.) With respect to Juarez's nonrenewal, the Magistrate Judge found that Juarez "failed to plausibly establish any entitlement" to employment past the term of his contract, and therefore recommended granting summary judgment to all Defendants on the § 1983 Fourteenth Amendment Due Process claim regarding the contract nonrenewal. (*Id.* at 13–15.)

The summary judgment materials submitted by Plaintiff contain two statements by Otis Powers and Juarez indicating that Plaintiff's pay was reduced after he resigned from the CFO position. (Doc. No. 51-5 at 8, 14. (Powers: ". . . you're willing to go from a pay rate 8 to a pay rate 5...is that a 5 position?" Juarez: "Yeah." ; Powers: "And like I told Tony Juarez....he has to file the grievance because I mean . . . he went from a pay level 8 to a 5 and he had to reapply for the position.") Since Powers was allegedly a co-conspirator and his statements were made to elicit Plaintiff's participation in filing a grievance against Superintendent Gonzales, as per the alleged policy of the Defendants, this statement and Plaintiff's taped confirmation is relevant and admissible. *See* FED. R. EVID. 801(d)(2)(E). The Plaintiff has thus submitted evidence indicating that his reassignment was not simply a transfer, but an action that reduced his salary. In addition, the Court takes note that the circumstances of the reassignment and the titles of the two positions—Plaintiff was asked to "step down" from Chief Financial Officer to Grants Administrator—are indicative that the reassignment was in fact a demotion. On the other hand, the portions of Plaintiff's contract filed

21

with the Court, and the provisions of BISD policy provided to the court do not make any mention of salary.

Therefore, the Court finds that the Plaintiff has at least submitted sufficient evidence to raise a fact issue as to whether or not he possessed a property interest in the salary accompanying his position as CFO. *Cf. Johnson v. San Jacinto Junior College*, 498 F. Supp. 555 (S.D. Tex. 1980) (determining reassignment to be a demotion where "plaintiff had fewer responsibilities, and that his performing [in his new position] required a lesser degree of skill than the position . . . which he previously had held. . . [and where] plaintiff suffered a decrease in salary as a result of the reassignment.")

Whether or not Juarez was wrongfully deprived of such property interest without due process is a different matter. Juarez has alleged that his resignation and alleged demotion amounted to a constructive termination because he was told to either resign and accept a demotion or face termination. His due process claim rests on the premise that he was entitled to some notice and a hearing before he was reassigned. Plaintiff admits that grievance procedures were available to him after his reassignment—he, in fact, filed a grievance complaint regarding his reassignment with the Board. (Doc. No. 25-2.) Although Juarez later withdrew from participating in the grievance proceeding that he initiated, he admits that he was provided with the opportunity for a hearing. (Doc. No. 25 at 12–13.)

The Fifth Circuit has held that where a public employee failed to first seek redress through existing grievance procedures, even if her demotion were fraudulently obtained, she was not "deprived of a constitutional right to procedural due process." *Rathjen v. Litchfield*, 878 F.2d 836, 841 (5th Cir. 1989). *See also Vicari v. Ysleta Independent School District*, 291 Fed. Appx. 614 (5th

Cir. 2008) (applying *Rathjen* to a former school administrator's due process claim). The Court in *Rathjen* explicitly distinguished the case from constructive termination cases where plaintiffs' due process rights were found to have been violated. *Rathjen*, 878 F.2d 836 at 839 (citing *Fowler v. Carrollton Public Library*, 799 F.2d 976 (5th Cir. 1986); *Findeisen v. North East Independent School District*, 749 F.2d 234 (5th Cir. 1984)). "Those cases rested on the premise that once an employee has voluntarily resigned, no procedural remedy is available from his former employer. Indeed, in *Fowler* and *Findeisen*, the employees sought but did not obtain post-termination hearings." *Id.* (internal citations omitted).

In this case, the Juarez was given the opportunity to seek redress through BISD's grievance procedures. Although he participated in the initial part of such procedures—by filing and appearing at the Level 2 hearing—he refused to continue participation because that the hearing officer was the same hearing officer who presided over the Whittemore Grievance against him. (Doc. No. 25 at 12–13.) Nothing in the record indicates that the hearing officer possessed any unfair bias against Juarez or that Juarez was denied the opportunity to seek redress for his alleged property deprivation through the grievance process. Therefore, the Court finds that BISD is entitled to summary judgment on Juarez's § 1983 Fourteenth Amendment Due Process claim regarding his reassignment.

To the extent that Juarez's § 1983 Fourteenth Amendment Due Process claim addresses the nonrenewal of his contract, the Court finds that he has not yet submitted evidence demonstrating that he had a property right in continued employment with BISD. His contract was for a term of one year only, and explicitly states that it "is not governed by the nonrenewal provisions of Texas Education Code Chapter 21" and does not give Juarez "any property rights in employment beyond the contract term." (Doc. No. 25 at Exs. 1a, 1c.) Moreover, the BISD Policy submitted by Plaintiff also states

23

that "[a] contract of employment with the District creates a property interest in the position only for the period of time stated in the contract. Such a contract creates no property interest of any kind beyond the period of time stated in the contract." (*Id.* at Ex. 6.)

Plaintiff's subjective expectations of contract renewal, and/or any allegations of an informal policy or understanding would not be sufficient to override the formal policy of BISD regarding whether Plaintiff possesses a property interest. *See Perry v. Sindermann*, 408 U.S. 593, 603 (1972) (disagreeing with Circuit Court's holding that "a mere subjective 'expectancy'" to continued employment would be protected by procedural due process); *Nunez v. Simms*, 341 F.3d 385, 391 (5th Cir. 2003) ("[A] mere subjective 'expectancy' is not a liberty or property interest protected by the Due Process Clause.") (citing *Perry*); *Staheli v. Univ. of Mississippi*, 854 F.2d 121, 125 (1988) ("[W]hen formal rules and informal understandings conflict, the formal rules control. In other words, when the state provides an explicit and formal policy governing entitlement to a job, informal and customary understandings cannot create a property interest in the face of the formal rules.")

The Plaintiff has requested the opportunity to depose Hector Gonzales and alleged that testimony elicited from such deposition would be relevant to the issue of his contract nonrenewal. (Doc. No. 55 at 3.) If Mr. Gonzales's testimony or other evidence affirms that Plaintiff had a property right in his contract renewal beyond Plaintiff's subjective expectation or informal District policy, Plaintiff may have a viable due process claim with respect to the contract nonrenewal. *See Stapp v. Avoyelles Parish School Board*, 545 F.2d 527 (5th Cir. 1977). The Court therefore defers its ruling on this issue subject to the Plaintiff's submission of materials according to the schedule provided in the accompanying order.

*F.  Juarez's § 1983 Fourteenth Amendment Due Process claim against the Individual Defendants in their personal capacities*

For the reasons discussed above—namely that Plaintiff had the opportunity for a hearing on his reassignment via the grievance process—the Court finds that the Individual Defendants are also entitled to summary judgment on Plaintiff's § 1983 Fourteenth Amendment Due Process claim with respect to his reassignment.  The Court will defer its ruling on the issue of Plaintiff's contract nonrenewal subject to the schedule provided in the accompanying order.

*G.  Exhaustion (Contract, Whistleblower, and TOMA claims)*

Plaintiff has also objected to the Magistrate Judge's finding that he could not appeal employment decisions made by the Board before exhausting his claims via available administrative procedures.  (Doc. No. 55.)  He argues that he was given no Notice of Termination, therefore the timetable for exhaustion of his remedies "never began and therefore never ran."  (*Id.*)

Juarez's reliance on *Ogletree v. Glen Rose Independent School District* misplaced.  226 S.W.3d 629 (Tex. App.—Waco May 2, 2007, no pet.).  There, the Texas court could not discern whether or not the Plaintiff's contract was subject to Texas Education Code Chapter 21.  *Id.* at 632.  It held that under Chapter 21 contracts, the plaintiff would have only  been subject to a timetable following notice, and that since there was no evidence she actually received notice, the defendant could not establish that plaintiff had failed to exhaust her administrative remedies.  *Id.* at 632–33.

Juarez's contract was expressly not a Chapter 21 contract.  (Doc. No. 25 at Ex. 1.)  Remedies through the grievance procedures could have been available, but Juarez refused to participate through the end of the process.  (*Id.* at 12–13.)  In addition, there is no evidence in the record that Juarez first exhausted his complaints with the appropriate administrative bodies.  *See* TEX. GOV'T CODE §

554.006 (claims under the Texas Whistleblower Act must first be exhausted before an administrative body); TEXAS EDUC. CODE § 7.057(a)(2) (employment contract disputes may be appealed to the Commissioner of Education); *Harrison v. Neeley*, 229 S.W.3d 745 (Tex. App.—San Antonio May 9, 2007, pet. denied) (holding that the TOMA is one of the "school laws of this state," so that alleged violations of it must first be exhausted by appeal to the Commissioner of Education"). The Court therefore finds that Juarez did fail to exhaust his contract, Texas Open Meetings Act, and Texas Whistleblower Act claims, and BISD and the Defendants are entitled to summary judgment on these claims.

*H. Deposition of Defendant Gonzales*

Plaintiff also sought to depose Superintendent Hector Gonzales. (Doc. No. 55 at 3–4.) He is a defendant in this case. The Court grants this request subject to the amended dates provided in the accompanying order.

## V. Summary and Order

For the foregoing reasons, summary judgment is GRANTED as to the following claims:

1. Juarez's § 1983 Fourteenth Amendment Due Process and First Amendment retaliation claims against Defendant Trustees and Gonzales in their official capacities;

2. Juarez's § 1983 Fourteenth Amendment Due Process and First Amendment retaliation claims against BISD, relating to Juarez's reassignment;

3. Juarez's § 1983 Fourteenth Amendment Due Process claims against individual defendants in their personal capacities, relating to Juarez's reassignment;

4. Juarez's § 1983 First Amendment retaliation claim against individual defendants in their personal capacities, relating to Juarez's reassignment;

5. Juarez's contract, Texas Open Meetings Act (TOMA), and Texas Whistleblowers Act (TWA) claims against BISD, its Trustees, and Gonzales; and

6.     Juarez's tortious interference with contract claim against Defendant Saldana.

The Court withholds judgment on the following claims pending supplementation by the Plaintiff and these claims may thereafter be resolved by trial or summary judgment:

1.     Juarez's § 1983 Fourteenth Amendment Due Process claims against BISD and the individual Defendants, relating to Juarez's contract nonrenewal;

2.     Juarez's § 1983 First Amendment retaliation claim against the individual Defendants in their personal capacities and BISD, relating to the nonrenewal of Juarez's employment contract; and

3.     Defendants' related qualified immunity defense to Juarez's claims.

It is hereby ORDERED that the Report and Recommendation (Doc. No. 52) is ADOPTED in part, REJECTED in part, and rulings as described above are DEFERRED. The Court holds that:

1.     Defendant Miguel Saldana's Motion to Dismiss (converted to a Motion for Summary Judgment) is GRANTED. (Doc. No. 30.)

2.     The Trustee Defendants, BISD, and Superintendent Gonzales's Motions to Dismiss (converted to Motions for Summary Judgment) are GRANTED in part and DEFERRED in part. (Doc. Nos. 29, 31.)

3.     The Trustee Defendants, BISD, and Superintendent Gonzales's Objections are OVERRULED in part and DEFERRED in part. (Doc. Nos. 53, 54.)

4.     With respect to the pending motions, Plaintiff's Objections are SUSTAINED in part as described above with respect to the inadmissibility of evidence insofar as the evidence is relevant and not hearsay. Plaintiff's Objections are OVERRULED with respect to exhaustion of contract, TOMA, and TWA claims against Defendants. (Doc. No. 55.)

SIGNED this 23rd day of April, 2010.

_____
Andrew S. Hanen
United States District Judge

27